(Del. Rev. 12/98)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

Cordelia M. Harmon
_____

_____
(Name of Plaintiff or Plaintiffs)

v.    CIVIL ACTION No. _____

0 6 - 3 8 5

Laurel School District Board

of Education
_____
(Name of Defendant or Defendants)

FILED
JUN 1 4 2006
U.S. DISTRICT COURT
DISTRICT OF DELAWARE

## COMPLAINT UNDER TITLE VII

## OF THE CIVIL RIGHTS ACT OF 1964

1.  This action is brought pursuant to *Title VII of the Civil Rights Act of 1964*, as amended, for **employment discrimination**. Jurisdiction exists by virtue of 42 U.S.C. §2000e-5. Equitable and other relief are also sought under 42 U.S.C. §2000e-5(g).

2.  Plaintiff resides at  32289 Johnson Road,
     (Street Address)
    Salisbury,  Wicomico   Maryland   21804
    (City)     (County)    (State)    (Zip Code)
    (410) 749-9797
    (Area Code) (Phone Number)

3.  Defendant resides at, or its business is located at  1160 South Central Ave.
                                                          (Street Address)
    Laurel,   Sussex   Delaware   19956
    (City)   (County)   (State)   (Zip Code)

4.  The discriminatory conduct occurred in connection with plaintiff's employment at, or application to be employed at, defendant's  Laurel School District  place of bussiness
                                    (Defendant's Name)
    located at  1160 South Central Ave.,
               (Street Address)
    Laurel,   Sussex   Delaware   19956
    (City)   (County)   (State)   (Zip Code)

5.  The alleged discriminatory acts occurred on ___26___, __July__, __2004__.
    (Day) (Month) (Year)

6.  The alleged discriminatory practice  ☒ is  ☐ is not continuing.

7.  Plaintiff filed charges with the Department of Labor of the State of Delaware,
    __Labor Law Enforcement Office__, __24 N, West Front Street__, __Milford__
    (Agency) (Street Address) (City)
    __Sussex__, __Delaware__, __19963_____, regarding
    (County) (State) (Zip Code)
    defendant's alleged discriminatory conduct on ___17___, __December__, __2004__.
    (Day) (Month) (Year)

8.  Plaintiff filed charges with the Equal Employment opportunity Commission of the United States regarding defendant's alleged discriminatory conduct on: ___21___, __December__ __2004__.
    (Day) (Month) (Year)

9.  The Equal Employment Opportunity Commission issued the attached Notice-of-Right-to-Sue letter which was received by plaintiff on: ___11___, __March__, __2006__.
    (Day) (Month) (Year)

**(NOTE: ATTACH NOTICE-OF-RIGHT-TO-SUE LETTER TO THIS COMPLAINT.)**

10. The alleged discriminatory acts, in this suit, concern:
    A.  ☐ Failure to employ plaintiff.
    B.  ☐ Termination of plaintiff's employment.
    C.  ☐ Failure to promote plaintiff.
    D.  ☒ Other acts (please specify below)

During the 2004-2005 school year, I was reassigned involuntarily to another teaching position because I complained to the administration about physical abuse, sexual harassment, verbal abuse, discrimination, and retaliation. Verbal and written complaints against me by other teachers. I was never told who the teachers were. A hearing was held by the Laurel Board of Education concerning the reassignment. I was not afforded Due Process. My freedom of speech rights were revoked by my supervisor because I filed a complaint with the EEOC. When hiring African-American teachers to fill special education positions, race and ethnic decent are used to determine the type of students taught by African-American special education teachers. African-American teachers are given classes with behavior problem students in an Intense Learning class or classes in which the students are moderately to severely challenged. An Employee Intent Form was utilized to justify the involuntary re-assignment. This had never been done before. I was the only teacher in the Laurel School District to be re-assigned involuntarily. The Laurel School District gave a different reason for the re-assignment at every level of the grievance process.
PLEASE NOTE, ADDITIONAL CORRESPONDENCES HAVE BEEN INCLUDED DETAILING THE NATURE OF THE COMPLAINT AS FORWARDED TO THE EEOC.

11. Defendant's conduct is discriminatory with respect to the following:

    A. ☒ Plaintiff's race

    B. ☒ Plaintiff's color

    C. ☒ Plaintiff's sex

    D. ☐ Plaintiff's religion

    E. ☐ Plaintiff's national origin

12. A copy of the charges filed with the Equal Employment Opportunity Commission is attached to this complaint and is submitted as a brief statement of the facts of plaintiff's claim.

13. If relief is not granted, plaintiffs will be irreparably denied rights secured by Title VII of the 1964 CivilRights Act, as amended.

14. Plaintiff's has no adequate remedy at law to redress the wrongs described above.

**THEREFORE, Plaintiff prays as follows: (Check appropriate letter(s))**

    A. ☐ That all fees, cost or security attendant to this litigation be hereby waived.

    B. ☐ That the Court appoint legal counsel.

    C. ☒ That the Court grant such relief as may be appropriate, including injunctive orders, damages, cost and attorney's fees.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: May 31, 2006

_Cordelia M. Harmon_
(Signature of Plaintiff)

_____
(Signature of additional Plaintiff)

EEOC Form 161 (10/96)          **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

To: Cordelia Harmon
32289 Johnson Road
Salisbury, MD 21804

From: Equal Employment Opportunity Commission
Philadelphia District Office
The Bourse
21 S. Fifth Street, Suite 400
Philadelphia, PA  19106-2515

[ ]   *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR § 1601.7(a))*

| Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 120-2004-05311 | Legal Unit | (215) 440-2828 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ]   The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ]   Your allegations did not involve a disability that is covered by the Americans with Disabilities Act.

[ ]   The Respondent employs less than the required number of employees or is not otherwise covered by the statues.

[ ]   We cannot investigate your charge because it was not filed within the time limit required by law.

[ ]   Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge.

[ ]   While reasonable efforts were made to locate you, we were not able to do so.

[ ]   You had 30 days to accept a reasonable settlement offer that afford full relief for the harm you alleged.

[ X ]   The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ]   The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ]   Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS from your receipt of this Notice;** otherwise, your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

Marie M. Tomasso, District Director

March 6, 2006
*(Date Mailed)*

Enclosure(s)

cc:   Laurel School District
Christopher Tinari, Esquire (For Charging Party)
James D. Griffin, Esquire (For Respondent)

32289 Johnson Road
Salisbury, Maryland 21804

Mrs. Hawthorne
Equal Employment Opportunity Commission
Philadelphia District Office
21 South 5th Street, Suite 400
Philadelphia, PA 19106-2515

October 18, 2005

Dear Mrs. Hawthorne,

I mailed a packet of information to you on Friday, October 14, 2005. Enclosed in this packet is a more in-depth summation of the events leading to and maintaining this complaint. Also, I have included pictures of the injuries that I sustained on May 11, 2004. In addition, I have included copies of the original Complaint Form, Remedy Form, and Witness Form. Additional witnesses have been added.
Thank you for your recent follow-up telephone call. I truly appreciated it and your clarification of the Response Letter.

Please, be forewarned, the information being forwarded to you is overwhelming. I tried to cover everything; however, I know I have overlooked many facts.

A Board Hearing was held on January 6, 2005 in reference to the grievances I had filed. The hearing was taped. I requested the tapes for months. When I finally received the six cassette tapes of the hearing there is a distinct high pitched squeal that makes it difficult to hear the conversations and testimony, even though the environment hearing room was free from noise. I'll try to decipher the most noteworthy information, dub another tape, and forward each on to you. If you would like all of the tapes, which is about eight hours of depositions, please let me know.

In response to the Respondent's information forwarded to you, I would like to refute the Respondent's information as forwarded to you.

1. Racial consideration is given when considering teachers to teach self-contained classrooms that contain mildly to moderately retarded children. During the 2004-2005 school-year, 3 out of the 4 teachers teaching this type of class were of African-American decent. The teacher who taught this type of child at the high school during the 2003-2004 school year was of African-American decent. She resigned and obtained a position in another school district.
2. I submitted numerous documents/certified correspondences sent to the Respondent on June 16, 2004, August 2, 2004, and September 16, 2004 detailing verbal, physical, and sexual abuse, as well as harassment, retaliation, and discrimination. The Respondent never responded to either of the letters via oral or written communication.

3. Please consider, less than one month after I submitted the first letter to the Superintendent, Mr. Keith Duda, I was involuntarily reassigned. I deem this retaliation for lodging complaints.
4. I was informed on July 26, 2004, that I was being reassigned involuntarily. I was the only teacher in the Laurel School District, during the 2004-2005 involuntarily reassigned.
5. Tacy Steele wanted my position. On the first day of employment during the 2003-2004 school-year, Mrs. Bradley approached me and asked me if I was willing to switch positions with Mrs. Steele because Mrs. Steele was upset because she was not aware of the vacancy and position that I was hired for. Mrs. Steele taught the Special Education Self-contained classroom. The position that I held during the 2003-2004 school-year was never advertised in the newspapers, on the District's website, or via announcement posting in either school. I refused to change positions.
6. Mrs. Steele lodged a complaint with the Laurel Education Association's President, Mrs. Susan Darnell in an effort to obtain the position I was hired for...
7. At the conclusion of the 2003-2004 school-year, Mrs. Steele submitted a letter to Mrs. Bradley requesting my position and Mrs. Bradley granted Mrs. Steele the position. This type of procedure to obtain a position had not been the past practice.
8. During the initial meeting held on July 27th, 2004, Mr. Duda stated that he would secure letters detailing complaints teachers had concerning me. Mr. Duda stated during a Board Hearing held on January 6, 2005, that he had received letters from teachers. He stated he read the letters and destroyed the letters. I was never privileged to obtain or read copies of these letters, nor was I ever told who the complainants were. The only documents that the Respondent acknowledged were grievances filed by me, the complainant, and the Laurel Education Association and one written correspondence addressed to Mrs. Julie Bradley, Principal, of the Laurel Middle School and Tacy Steele, Special Education Teacher. This correspondence stated that I would advocate on my own behalf because Tacy Steele had approached me and positioned herself within inches of my body with a very hostile and threatening demeanor. Mrs. Bradley had not advocated on my behalf during the 2003-2004 school year and I felt it necessary to do so on my own behalf.
9. Mrs. Julie Bradley responded with a letter that stated that I was hostile. It was upon receipt of this first letter that I told Mrs. Bradley that I had filed a complaint with the EEOC. Mrs. Bradley revised her letter on the same date that I received it and took out the word "hostile."
10. I was hired as a Language Arts Special Education Teacher. Each special education teacher had previously held a Resource Room/TAM type position in a specific subject matter. (i.e. such as Language Arts, Mathematics, Science, or Social Studies) This means each teacher taught a specific area in her classroom as well as taught with another regular education teacher in his or her classroom. TAM means when two teachers, one special education teacher and one regular education teacher service students in the same classroom at the same time.

All of the special education teachers' positions changed. Mrs. Kim Husband's, Mrs. Nancy Sickler's, and Mrs. Steele's positions changed from Self-contained to full time TAM.

Mrs. Steele's position should have remained the same and my position should have become the full time TAM position.

11. Artifact 31 – Page 4, #5 – The other special education teachers changed positions and traveled from classrooms while I was confined in a classroom. Why was it so imperative that I remain in my classroom, be involuntarily reassigned during the 2004-2005 school-year?
12. Artifact 31 – The reassignment was to isolate me from the mainstream and deemed a disciplinary measure by me and the Laurel Education Association.
13.

14. The Special Education Teacher whom resigned from the position that I filled had maintained the same Language Arts Special Education position for 9 or 10 years. Her name is Laura Manges. She now teaches in the Lake Forest School District.
15. The Respondent did not meet willingly to resolve concerns until I informed Respondent that I had filed an EEOC complaint. For instance, a prime example is when Douglas Brown, an 8th grade Caucasian, Language Arts Teacher cursed me in a loud, obnoxious tone with the Assistant Superintendent, Linda Schneck in the building, the principal, office staff, and parents entering the building. When I requested that Mrs. Bradley intervene and hold a meeting to discuss Mr. Brown's adverse actions, with a Laurel Education Representation, Deborah Waller, we were told by Mrs. Bradley that the matter was between two Laurel Education Association members and she was not going to get involved. *Mr. Brown is Mrs. Bradley's cousin.* After a week or so of persistence, Mrs. Bradley finally agreed to a meeting with Mr. Brown, herself, Mrs. Bing, the assistant principal, and me. I was not allowed to bring a representative from the association. Mrs. Bradley expressed how angry she was that I wanted to have Mrs. Waller present, a Laurel Education representative for the Laurel Middle School and member. During this meeting, Mr. Brown's actions were never addressed. I was never informed if he was disciplined for his actions. I was reprimanded verbally during the meeting for wanting a Laurel Education Association representative present. Mr. Brown is Mrs. Bradley's cousin.
16. If in fact, meetings were held, they were held with other staff members and the same meetings were held to obtain letters of complaints against me to justify the involuntary reassignment.
17. I was informed during the latter part of May 2005; I was going to receive my previous position. Mrs. Bradley told me. Therefore, after obtaining/knowing that I was going to serve in the same capacity as I had during the 2003-2004 school-year, I sent a letter detailing concerns about Mrs. Bradley.

Artifact 36A - A letter dated August 3, 2005 was sent to Mr. Duda and the Board of Education President, Charles Musser, it was a correspondence of concern. I had been informed that Mrs. Bradley on July 28, 2005, had conveyed erroneous information about me to a teacher's assistant, Ronnie Owens, her daughter, and in front of other staff members on July 27, 2005. I reported this incident to Mr. Duda. He stated that he would take care of the matter. I don't know if he handled this matter with Mrs. Bradley.

18. After Mrs. Bradley opened my mail illegally on several occasions, I was told that I could not have personal mail delivered at Laurel Middle School. No other teacher has been told this.
19. There are only two Nationally Board Certified Teachers in the entire Laurel School District. The National Board Certification is the highest honor a teacher can acquire. I am one and Paul Hayes, a Caucasian Art Teacher, employed at the Middle School is the other. Paul has never been reassigned involuntarily because he is more highly qualified for a specific position or because he has earned the National Board status.
20. At each level of the grievance process, the District changed its reason for reassigning me.
21. Artifact 20 – Mrs. Darnell, the Laurel Education President stated, no teacher had ever been required to participate in Conflict Resolution Training as a stipulation to obtain his or her previous position.
22. No teacher has ever been required to participate in Conflict Resolution Training with unidentified teachers that have lodged complaints against another teacher.
23. Artifacts 22, 23A, 24, 25, and 27 details information about my Freedom of Speech Rights being restricted by Gail Fowler, Special Services Supervisor for the District. Mrs. Fowler also made a comment that had no relevance to a call that I had made to the Delaware Department of Education. By calling the Delaware Department of Education, Mrs. Fowler stated that I may file a complaint with the EEOC against her.
24. Artifact 27 - Mrs. Fowler, during a meeting told the Superintendent that she wanted a letter that I had sent to him destroyed if he was going to destroy her letter that was sent to me. My letter contained a complaint about her remark directed to me about the EEOC. *This is just a thought, how did Mrs. Fowler know about the letter that I had sent to Mr. Duda? I only sent the letter to him. I only told Mrs. Bradley that I had filed the EEOC complaint.*
25. Artifact 30 – Mrs. Bradley placed a *job announcement* in my mailbox. I don't know of any other teacher who has received such an announcement.
26. Artifact 31 - Also, I refute the following based upon the Respondent's responses:

    1. I was not hired as a generic special education teacher to teach in all areas of my certification. If this were the case, I could teach Pre-kindergarten through adulthood. No teacher is arbitrarily reassigned involuntarily because of his or her certifications.

2. The Resource Room Teaching position that I held during the 2003-2004 school-year does not compare to the Self-contained Teaching position that I held during the 2004-2005 school years. It was less desirable.
3. The highest certification status of a teacher has never come into play when determining an involuntary reassignment.
I am being discriminated against because of my certification status---Nationally Board Certified. All of the other special education teachers at Laurel Middle School and in the District are equally qualified to teach the Self-contained class if he or she is certified to teach in a secondary school.
4. Same comments as 1 and 3 above.
5. ***The Employee Intent Form*** has never been utilized to remove a teacher from a position involuntarily. All of the Special Education Teachers at Laurel Middle School had taught in a Resource Room setting during the 2003-2004 school year, except Tacy Steele. Ms. Steele taught the self-contained classroom for four years.
6. It is irrelevant if I am teaching in the same building and same room. What is pertinent is the type of student that I am teaching and my job duties. The children's disability codes were vastly different and more involved and the manner in which I was involuntarily transferred.

27. Artifact 31 – CONCLUSION SECTION: During the Board Hearing on January 6, 2005, the Laurel School Board members were not afforded an opportunity to hear about the retaliation, discrimination, harassment, and Freedom of Speech issues I had complained about, suffered, and documented.
28. Artifact 31 – Page 3, GRIEVANCE NO. 2 FINDINGS OF FACT.

I tried to cover each incident, correspondence, and concern in detail. Should you need more information, please do not hesitate to contact me.

Sincerely,

Cordelia M. Harmon

32289 Johnson Road
Salisbury, Maryland 21804

Mrs. Hawthorne
Equal Employment Opportunity Commission
Philadelphia District Office
21 South 5th Street, Suite 400
Philadelphia, PA 19106-2515

October 18, 2005

Dear Mrs. Hawthorne,

This is an explanation of the Mutual Agreement between the Laurel School District Board of Education and the Laurel Education Association, Inc for the school years 2001-2006. The Board has an obligation, pursuant to Chapter 40, Title 14, Delaware Code, to negotiate with the Laurel Education Association as the representative of employees designated with respect to the terms and conditions of employment.

I have highlighted certain sections in the Mutual Agreement that pertain to this complaint. The Board and its Administration are in violation of many aspects.

Pages 9-10   9.PROCEDURES The Levels of the Grievance Procedures

Page 12   10 C. No Reprisals- No reprisals of any kind shall be taken by the Board or any member of the administration against any party of interest, or the Association or any other participants in the grievance procedure by reason of such participation. I was retaliated against for expressing concerns and because I filed complaints. My job was given to someone else without just cause.
The administration never responded to my complaints about abuse harassment, discrimination, or retaliation.

Page 13   10 N. WITNESSES IN HEARING: I never had an opportunity to call witness in the hearing because I was never told who the charging complainants were.

Page 17   Article IV. TEACHER RIGHTS:
12. Non-Discrimination-The Board and the Association agree that there shall be no discrimination in practices, procedures, polices, hiring, training, assignment, promotion, transfer, or discipline of teachers or administration of this Agreement on basis or race, creed, color, sex, etc. The District's hiring practices for the Self-Contained Special Education Classrooms are discriminatory. African-American teachers are hired to to teach mildly to moderately retarded students. I was the only African-

American Special Education teacher during the 2003-2004 school-year teaching TAM and Resource Room students.

**13. RIGHTS BY LAW:** States the District shall not deny or restrict to any teacher such rights as he may have under Delaware School Laws or other applicable laws and regulations. This Section specifically states any investigation of an incident or alleged incident which may lead to possible disciplinary action shall not violate an employee's due process and/or just cause rights.

I did not receive Due Process as guaranteed under law. I never had the opportunity to respond to the complaints because I really did not know the nature of the teachers' complaints against me. Nor, do I know the teachers that lodged complaints against me.

**14. JUST CAUSE:** No teacher shall be disciplined without just cause

I was disciplined because of how other teachers felt about me and the fact that they expressed concern that they didn't want to work with me.

Page 19    **25. COMPLAINTS AGAINST TEACHERS:** Any complaint about a teachers reduced to writing must be brought to that teacher's attention within 5 working days of the date of the complaint. The principal will meet with said employee and the employee shall have an opportunity to rebut the allegations

The complaints against me were reduced to writing many months after teacher complained; therefore, the complaints were brought to my attention beyond the 5th day limitation. I never had an opportunity to refute the allegations because the complaints were very subjective in nature. I can not defend myself against someone else's emotions because they express a dislike against me.

Page 22    **BOARD RIGHTS**

Page 29    **TEACHER EMPLOYMENT:**
The Board agrees to make a reasonable attempt to hire only certified teachers holding standard certificates issued by the Department of Education for every teaching assignment, including summer school.

By law, all teachers hired must be qualified to teach within a specific discipline.

Page 32    **TEACHER ASSIGNMENT**

Re-Assignment – Shall refer to situations requiring a change of work

assignment including subject, grade, or instructional assignment (TAM, Title I, Specialized Programs) within a given building.

**Re-assignments:** See pages 32, 33, & 34 in there entirety.

**Page 33 – VACANCY** – My position was not vacant.

**Page 33 – 77.** A request to transfer shall be given consideration. No mention was made to forcefully remove a teacher from any position.

**Page 33 – 78. USE OF INTENT FORM**
A request to transfer shall be given consideration.
No mention was made to forcefully remove a teacher from any position.

Page 35    INVOLUNTARY TRANSFERS & REASSIGNMENTS

Please, see page 35 I have highlighted the key points.

Page 49    PROTECTION OF TEACHERS

Employees shall immediately report cases of injuries by them in connection with their employment to their immediate supervisor.

When I reported incidents, nothing happened. There was no follow-up.

The Board regards assault on its employees a serious matter. Employees shall immediately report cases of assault suffered by them in connection with their employment to their immediate supervisor. Such notification will be immediately forwarded to the Superintendent who shall support the employee. The employee will be notified of the action taken in a timely manner.

When I reported incidents, nothing happened. There was no follow-up.

The Board shall review and evaluate each employee claim on a case-by-case basis. Such claim must be filed in writing 5 days from the date of incident to the District Office.

When I reported incidents, nothing happened. There was no follow-up.

Page 51    PERSONAL AFFAIRS

125. The personal affairs of a teacher are not an appropriate concern of either the Association or the Board of Education except as they affect the teacher's assigned duties or demean the teaching profession.

On July 27th, 2005, Mrs. Bradley had no right to discuss my personal business with another staff member or community member.

126. FULL RIGHTS OF CITIZENSHIP
Teachers shall be entitled to full rights of citizenship, and no religious or political activities of any teacher or the lack thereof shall be grounds for any discipline or discrimination with respect to the professional employment of such teacher, providing said activities do not violate any local, state, or federal law.

I tried to cover each the most noteworthy aspects of this AGREEMENT. Should you need more information, please do not hesitate to contact me.

Sincerely,

Cordelia M. Harmon



U.S. POSTAGE PAID
LAUREL,DE
19956
JUN 12,'06
00023274-06
19801

AMOUNT
$2.55

U.S.M.S.
X-RAY

FIRST CLASS

U.S. DISTRICT COURT
CLERK"S OFFICE
LOCKBOX 18
Wilmington,DE 19801

M. HARMON
SON ROAD
MARYLAND 21

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Cordelia M. Harmon
32289 Johnson Road
Salisbury, MD 21804

**DEFENDANTS**
Laurel School District Board of Educ.
1160 S. Central Avenue
Laurel, DE 19956

(b) County of Residence of First Listed Plaintiff: **Wicomico**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant: Sussex
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

FILED JUN 14 2006
U.S. DISTRICT COURT
DISTRICT OF DELAWARE

(c) Attorney's (Firm Name, Address, and Telephone Number)

Attorneys (If Known)
James D. Griffin,

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☒ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
42 U.S.C. 2000e-5    42 U.S.C. 2000e2    42 U.S.C. 2000-3
Brief description of cause:
Employment Discrimination, Other Unlawful Employment Practices

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ 150,000.00
CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions)
JUDGE                                    DOCKET NUMBER

DATE: May 31, 2006
SIGNATURE OF ATTORNEY OF RECORD: *Cordelia M Harmon*

**FOR OFFICE USE ONLY**

RECEIPT #    AMOUNT    APPLYING IFP    JUDGE    MAG. JUDGE